MARTIN E. BAKER, Plaintiff in Error, *v.* MAHALA COPENBARGER et al., Defendants in Error.

ERROR TO SANGAMON.

A devise of real estate, which by the provisions of the will is to be converted into money, and that money distributed among the devisees, must be treated as a devise of money and not of land.

Devisees may elect to take the land itself instead of the money; but the character of the devise cannot be changed from money to land without the concurrence of all the devisees.

In such case, one devisee cannot sell or convey a valid title to any part of the land; nor can the interests of one of the devisees be sold on execution.

It is competent for a *feme covert* to elect to take the land instead of the money; but that election can only be made under the same forms and solemnities as by law are required to enable her to convey her fee.

A purchaser at sheriff's sale of the interest of one of the devisees in such case is not entitled to receive that portion of the money produced by the sale of the land to which the devisee was entitled under the will. The devisee, in such case, has no interest in the land, which can be levied upon under execution.

A naked legal title, which is held in trust, cannot be sold on execution at law. So of an equitable title, which is only contingent and uncertain.

THIS suit was heard before DAVIS, Judge, at November term, 1853, of the Sangamon Circuit Court. See statement of case in the opinion of the court.

J. C. CONKLING, for plaintiff in error.

STUART & EDWARDS, and S. T. LOGAN, for defendants in error.

CATON, J. By his last will and testament, James Newell devised the premises in question to his wife for life; then the will proceeds: "And that at the death of my said wife, all the property hereby devised or bequeathed to her as aforesaid, or so much thereof as may remain unexpended, be sold, and equally divided among my children, Martha Copenbarger," and four others, naming them.

Conveyances were made by several of the devisees to William D. Newell, one of the devisees, of their interest in the premises, to which objections were made, but which, with the view we take of this case, it is unnecessary to examine. Although there was some attempt made by the testimony of Hooper to show that Mrs. Copenbarger had at one time agreed to sell her interest in the premises to William D. Newell, yet there is not

a pretence for saying, that she ever made a valid conveyance for that purpose. Hooper swears that he did, during the lifetime of her husband, draw up an agreement by which she agreed to sell her interest to William for two hundred dollars, which was to be paid in eight years, and if not promptly paid at that time, all claim under the agreement, and all payments were to be forfeited, and the witness thinks this agreement was signed by Mrs. Copenbarger and her husband, and left in the hands of old Mrs. Newell, but that the agreement was never acknowledged. Without an acknowledgment she could make no valid conveyance of her estate, and hence it is unnecessary to inquire whether he ever made payment according to the terms of the agreement. There was certainly no legal conveyance by Mrs. Copeland to her brother William.

Here was a devise of real estate, which, by the provisions of the will, was to be converted into money, and that money distributed among the devisees. This, it is admitted on all hands, must be treated as a devise of money and not of land. This rule is so well settled, that it is not necessary even to refer to the authorities on the subject. The legal title to the land is held in trust for the purposes specified in the will, whether the title is left by the will to descend to the heirs by operation of law, or whether by the will it is vested in a trustee; nor does it make any difference in this respect, that the legal title descended to the devisees to whom the bequest is to be paid in money when the land is sold. There can be no doubt, however, where a devise is made of money to be produced by the sale of land, as in this case, that by the election of all the devisees, they may take the land itself instead of the money, where all are competent to make such election; but it is equally clear, that the character of the devise cannot be thus changed from money to land except by the concurrent action of all the devisees, for as each has a separate right to insist upon the bequest as provided by the will, their claim cannot be defeated except upon the election of all, hence each must have the uncontrolled right to have the land sold and to receive his share of the proceeds of the sale of the land. If four of the five devisees could elect to take the bequest in land instead of money, they could, without the consent of the fifth, compel her to take an undivided fifth share of the land instead of a fifth part of the money, for which the whole land would sell. The fifth, therefore, has the right to insist that the land shall be sold, and that, too, unincumbered and unembarrassed by any act done or suffered by any of the other devisees. If one of the devisees could sell his interest in the land, and convey a valid title to his

fifth, and another could suffer an execution to be levied upon his undivided fifth, and sold and a good title conveyed to the purchaser, it is manifest that the title would become so embarrassed as to prejudice the interests of the other devisees; for the sale must be of an interest in the land, and not of money to be produced from the land.  If they have a right to insist upon a sale, there can be no doubt that they have a right to have as perfect a title conveyed under that sale, as descended from, or was devised by, the testator.  It is competent for a *feme covert* to elect to take the land instead of the money, but that election can only be made under the same forms and solemnities as by law are required to enable her to convey her fee.  Oldham *v.* Hughs, 2 Atk. 452; May *v.* Roper, 4 Sim. 360; Jarman on Wills, 538; Rice *v.* Baxter, 1 Watts & Serg. 455.  There is no pretence that this was done by Mrs. Copenbarger; hence she has the undoubted right to have the land sold and her proportion of the proceeds paid to her.

The question, however, will still arise, whether the purchaser at the sheriff's sale will be entitled to receive that portion of the money which by the will is devised to William Newell. This depends entirely upon the question whether he had any interest in the land which was subject to be levied upon under the execution.  If the plaintiff in the execution had a right to levy upon the land, he had a right to sell it, and to convey a good title in spite of the other devisees.  This we have already seen he could not do.  The reason of this is obvious.  A portion of the legal title had descended to and vested in him, not as owner but as trustee, to be sold and the proceeds distributed according to the directions of the will, and that title was held as strictly in trust as if he was to have no interest in the proceeds.  The land was not devised to him, but the money was. His only claim of interest was in that money, and even in that he had no certain interest till after the death of his mother, who, by the will, was authorized to sell it.  The naked legal title, then, which he thus held in trust, certainly could not be sold on execution at law.  Could his equitable title?  That was derived solely from the will.  By the will he derived no title to the land, either legal or equitable.  The devise, as before suggested, was not of the land, but of money.  The bequest was of money, not presently, but in expectancy, and even then not certain, but contingent upon his mother dying without disposing of the land.  Till that event happened, he had no certain interest either in the lands or its proceeds.  After that event, he had an expectancy of money, but nothing more.  There was even yet no money due him under the will, nor could it become due till it had been produced

by a sale of the land. Till then he could have no right to demand it of any one. The question then simply is, Can an execution be levied, not upon money present, nor even upon a claim for money presently due and payable, but upon a hope or probability that money may, upon the happening of some future event, become due and payable to the defendant in the execution? The very statement of the proposition conveys to every legal mind the most conclusive answer. We are of opinion that the sale under the execution conveyed no title whatever, either in the land or its proceeds, as to any of the devisees, and the decree of the circuit court must be affirmed.

*Decree affirmed.*