# Ralph Ayars, Trustee, Defendant in Error, v. Benjamin F. Doyle, Plaintiff in Error.

1. WILLS—*when remainder vests.* The law favors the vesting of estates. Whether a remainder vests upon the death of the testator or upon the death of the life tenant is to be determined according to the intent of such testator from a construction of his entire will. *Held,* under the terms of the will in this case, that the remainder in question did not vest until after the death of the life tenant; that an assignment by a usee prior to her death and prior to the death of the life tenant transferred no interest; that upon the death of such usee prior to the death of such life tenant without issue the interest of such usee became extinguished.

2. WILLS—*when bequest charge upon real estate.* Where the intention of the testator to that effect is clear a bequest is a charge upon his real estate.

Bill to construe will. Error to the Circuit Court of Shelby county; the HON. THOMAS M. JETT, Judge, presiding. Heard in this court at the October term, 1911. Affirmed in part and reversed in part and remanded. Opinion filed December 13, 1911.

CHAFEE & CHEW, WALTER C. HEADEN and W. C. & W. L. KELLEY, for plaintiff in error.

No appearance for defendant in error.

MR. JUSTICE THOMPSON delivered the opinion of the court.

This is a bill filed to obtain a construction of the will of Ewing M. Doyle who died testate in March, 1902. His will was admitted to probate April 24, 1902, and letters testamentary were issued to complainant. The testator left surviving him Helen M. Doyle, his widow, and Benjamin F. Doyle, Elizabeth Hale, Alexander P. H. Doyle, Isabel Whitworth, George R. Doyle, James C. Doyle, Charles W. Doyle, Mary H. Doyle, William A. Doyle and Martin R. Doyle, his children and only heirs. The only clauses of the will necessary to be

considered in determining the questions involved are the following:—

"Item 2. I have this day conveyed to my wife, Helen M. Doyle, the east half of the northwest quarter of Section Thirty-four, Town Fourteen (14) North, Range Two East of the 3rd P. M., in lieu of dower in my real estate, and therefore I direct that she shall not have dower in my remaining real estate. But I order and direct that my said wife shall receive all the income from the rents, issues and profits of the remaining part of any and all real estate of which I may die seized, during her natural life; and that said real estate shall not be sold or divided between my heirs until after the death of my wife Helen M. Doyle, but the said Helen M. Doyle shall keep all of my real estate in repair, and pay all taxes thereon, and all special assessments, and whatever governmental charges may be made."

"Item 4. I direct that my executor hereinafter named, or his successor, after the death of my wife, Helen M. Doyle, to sell my remaining real estate, to-wit: the east half of the southwest quarter and the west half of the southeast quarter, of section thirty-four (34), Township Fourteen (14) North, Range two (2) East of the 3rd P. M. in Shelby county, at such time and upon such terms as he shall deem for the best interests of my estate and give him full power and authority to make, execute and deliver deeds therefor, but until the sale of such lands, the rents and profits thereof, shall be paid to and received by my wife, said Helen M. Doyle."

"Item 6. I give, devise and bequeath to my son, George R. Doyle, the sum of Three Hundred Dollars ($300.00), less the amount of a certain promissory note signed by him, dated Dec. 25, 1894, for Twenty-Five Dollars ($25.00)."

"Item 7. I give, devise and bequeath to my daughter Mary H. Doyle, the sum of Two Hundred Dollars ($200.00)."

"Item 10. After the payment of the above legacies and bequests, and when my executor shall have sold

my remaining real estate after the death of my wife, I direct him to divide the proceeds equally between my children, Benjamin F. Doyle, Elizabeth Hale, Alexander P. H. Doyle, Isabel Whitworth, George R. Doyle, James C. T. Doyle, Charles W. Doyle, Mary H. Doyle, William A. Doyle and Martin R. Doyle.''

"Item 12. If at the death of my daughter Isabel Whitworth, the said real estate shall not have been sold, then I direct that her share of the same shall be equally divided among my remaining children or their descendants, the descendants of each child taking jointly the share of their parents and so I further direct that if at the time my real estate is sold, any of my children above named have departed this life leaving descendants, then the respective descendants shall take of my property the part which would have been received by their respective parents.''

Subsequent to the probate of the will, and before the death of the widow, Isabel Whitworth died without leaving any children. After the death of Isabel Whitworth and before the death of the widow, Mary H. Doyle married Henry Porterwood, who before that was a widower with two children. On August 12, 1904, Mary H. Doyle Porterwood made what is contended to be an assignment and sale to Martin R. Doyle of all her interest in the estate of her deceased father, Ewing M. Doyle, including the proceeds arising from the sale of any real estate to be thereafter sold by the executor. Subsequent to the making of this assignment and before the death of the widow, Helen M. Doyle, Mary H. Doyle Porterwood was murdered by her husband, leaving no children and her husband thereafter committed suicide leaving his two minor children by a former marriage.

Martin R. Doyle claims to be entitled under the said assignment to all that Mary H. Doyle Porterwood would have been entitled to, if she had been living after the death of the widow, and had not made an assign-

ment, being the one-ninth part of the proceeds of the real estate.

The children of Henry Porterwood claim to inherit through their father, Henry Porterwood, the portion of the estate that Mary H. Doyle Porterwood would have received had she survived her mother and not made an assignment. The other defendants claim that the bequest in the will to Mary H. Doyle Porterwood, by reason of her dying before her mother, descends to the surviving children and to descendants of deceased children of the testator.

The court found that the children of Henry Porterwood are not entitled to any portion of the money derived from the sale of the real estate; that Martin R. Doyle is not entitled to any of the proceeds of the sale of the real estate by virtue of the assignment to him made by Mary H. Doyle Porterwood, and that it was the intention of the testator that after the death of his wife the said lands were to be sold by the executor, and the proceeds of such sale were to be divided equally among his children after the sale and after the death of his wife, except in the event of the death of said Isabel before the real estate was sold, her portion was to be equally divided among his remaining children, or their children, in the event any of the testator's children died leaving a child or children, then such child or children should take the portion the parent would have received. A decree was entered giving Martin R. Doyle the one-eighth of the estate that he would take if the estate did not vest in any of the heirs, until after the death of the widow, and depriving him of any interest by virtue of said assignment. Martin R. Doyle assigns for error that the court should have decreed to him two-ninths of the estate, being the one-ninth that he took as heir and one-ninth as assignee of Mary H. Doyle Porterwood.

The bequest of $200 in item seven of the will to Mary H. Doyle has been paid; at least no question has been

raised concerning it. The bequest of $300 in item six of the will to George R. Doyle has not been paid. The court found that it was not the intention of the testator that this should be paid out of the proceeds of the real estate. George R. Doyle has assigned cross errors on this part of the decree.

The executor filed this bill to be instructed as to whom he should pay the money in his hands arising from the sale of real estate under the will after the death of the life tenant.

The share of Mary H. Doyle Porterwood is claimed by Martin R. Doyle under an assignment executed by her under seal and duly acknowledged and delivered before the death of the life tenant. Her share is also claimed by her step-children by inheritance through their father, her husband, who survived her. The other children and children of a deceased son of the testator contend that neither Martin R. Doyle takes anything by said assignment nor do the step-children take anything through their father. If the estate vested in Mary H. Doyle Porterwood at the death of her father, then she had the right to convey it. The instrument executed by her was a good and valid conveyance if she had anything to convey and hence there was nothing left for her step-children to inherit.

There are six clauses of the will that must be considered in coming to a conclusion as to who is entitled to this ninth share of the estate, namely the second, fourth, sixth, seventh, tenth and twelfth. Clause two gives the income and rents of the real estate to his wife for life and directs that it "shall not be sold or divided between my heirs until after the death of my wife." Clause four directs the executor after the death of his wife to sell the real estate at such time and upon such terms as he shall deem for the best interest of the estate. Clause ten provides: "When my executor shall have sold my real estate after the death of my wife, I direct him to divide the proceeds equally be-

tween my children" naming them. Clause twelve provides that if at the death of his daughter Isabel the real estate shall not have been sold then he directs that her share shall be equally divided among his remaining children or their descendants "and so I further direct that if at the time my real estate is sold, any of my children above named have departed this life leaving descendants then the respective descendants shall take of my property the part which would have been received by their respective parents."

The sixth and seventh clauses give cash legacies to two of the children.

It is clear from the 12th clause of the will that it was the intention of the testator that should Isabel die before the real estate was sold, that her portion would pass to the remaining children or descendants of children.

The will gives a legacy of $200 to the daughter, Mary H. Doyle, and one of $300 to George H. Doyle less the amount of a note signed by him. The tenth clause provides that after the payment of the above legacies and "when my executor shall have sold my real estate after the death of my wife I direct him to divide the proceeds equally between my children." While legacies are payable only out of personal estate unless the will otherwise provides, yet if the will directs the distribution of the proceeds of real estate after the payment of the legacies, then the legacies are a charge on the real estate. Here the will directs the distribution "after the payment of the above legacies." The legacy to George R. Doyle has not been paid. It should have been ordered to be paid, less the amount of the note mentioned in the will, out of the real estate with interest at the legal rate annually on the amount remaining due from the time it was due and payable and the legacy of $200 to Mary H. Doyle, if it has not been paid, should be paid to her assignee.

The question involved under the assignments of er-

ror on the part of Martin R. Doyle is, did Mary H. Doyle Porterwood take a vested interest in the real estate of her father upon his death, or only an interest contingent upon her surviving the death of the life tenant and the period of distribution fixed by the will. The law favors the vesting of estates at the earliest possible moment, and estates devised will vest in interest at the death of the testator, unless some later time for their vesting is clearly expressed by the words of the will or by necessary implication therefrom. "A contingent remainder is one limited to take effect either to an uncertain person or upon an uncertain event. It is limited by the instrument creating it either to a person not yet ascertained, or not in being, or so as to depend upon an event which may never happen. *It is an estate which is not ready to come into possession at any moment when the prior estate may end.* On the other hand, if the estate is at any time ready to come into possession, provided the prior estate should end, then it is a vested estate." Carter v. Carter, 234 Ill. 507. In the case at bar the estate was not ready to come into possession at the moment the life tenant died. The will does not give to the children a remainder but only an interest in the residue. By the terms of the will the real estate "shall not be sold or divided between my heirs until after the death of my wife, Helen M. Doyle." The executor is directed thereafter to "at such time and upon such terms as he shall deem for the best interest of my estate" sell my remaining real estate. He was then after the payment of the legacies to divide the proceeds equally between the named children. The will does not give to the children a remainder after the death of the widow, but only an interest in the residue contingent upon their surviving the conversion.

The only gift to the children contained in the will is in the direction to divide "after the death of my wife, I direct him *to divide* the proceeds equally" etc. In

such a gift it will not vest until the time so fixed for payment or distribution arrives.    McCartney v. Osburn, 118 Ill. 403.    Where the conversion of the property into money directed by the testator is not for the payment of the residuary bequest only, but for the payment of bequests, the purpose of the conversion will not be accomplished until the legacies admitted to be valid are paid.    In such case a devisee or residuary legatee cannot sell or convey a valid title to any part of the land directed to be sold by the executor nor can the interest of one of the devisees or residuary legatees be sold on execution.    Baker v. Copenbarger, 15 Ill. 103; Crerar v. Williams, 145 Ill. 625; Dorsey v. Dodson, 203 Ill 32.

The twelfth clause of the will contains no express provision as to what is to become of the interests of the children except Isabel, in case they should die leaving no descendants, and is almost identical with the provisions of the will construed in Jennings v. Jennings, 44 Ill. 488, where the children were described in the will by name, and where it was held the interest of a deceased child did not vest until the conversion. This construction has been since approved.    Barnes v. Johnson, 233 Ill. 620; Ebey v. Adams, 135 Ill. 80; Strode v. McCormick, 158 Ill. 142.

In determining the question of where an interest in property devised by will vests, the intention of the testator must be ascertained from the reading of the whole will.    By the terms of the will in controversy, it was the intention of the testator that his children should not have any interest that any child could convey, except subject to the contingency that such child should survive the time of the conversion.    Ridgeway v. Underwood, 67 Ill. 419.    The court properly decreed that plaintiff in error took no interest in the residue by virtue of the assignment made by Mary H. Doyle Porterwood, and that her step-children did not inherit anything from her through their father, but the court

erred in not decreeing to plaintiff in error the $200 legacy to Mary H. Doyle Porterwood assigned to plaintiff in error, if the same has not been paid, and in not decreeing the payment of the legacy to George R. Doyle from the proceeds of the real estate before distributing the residue.

The decree is affirmed in part and reversed in part, and the cause is remanded with directions to the trial court to enter a decree in accordance with the views herein expressed.

*Affirmed in part, reversed in part and remanded with directions.*